# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 2, 2007          Decided February 27, 2007

No. 05-7099

DECATUR LIQUORS, INC., AND
CHEKOLE TESHOME,
APPELLEES/CROSS-APPELLANTS

v.

DISTRICT OF COLUMBIA AND
ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION,
APPELLANTS/CROSS-APPELLEES

———

Consolidated with
05-7100

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01971)

———

*Donna M. Murasky*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellants/cross-appellees. With her on the briefs were *Todd S. Kim*, Solicitor General, and *Edward E. Schwab*, Deputy Solicitor General.

*Paul R. Q. Wolfson* was on the brief for *amici curiae* South Columbia Heights Neighborhood Association and North Columbia Heights Neighborhood Association. With him on the brief was *David F. Olsky*.

*Craig C. Reilly* argued the cause for appellees/cross-appellants. With him on the briefs were *Paul Pascal* and *Hanoi Veras*.

*Scott M. Hammack* argued the cause for *amicus curiae* American Civil Liberties Union of the National Capital Area in support of appellees/cross-appellants. With him on the brief were *Arthur B. Spitzer*, *Jonathan D. Hacker*, and *Jason A. Abel*.

Before: GINSBURG, *Chief Judge*, and GRIFFITH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: When the District of Columbia Council was considering revisions to the District's alcoholic beverage laws, then-Council Member (now Mayor) Adrian Fenty, who represented Ward 4, proposed a ward-wide four-year moratorium on the sale of single containers of beer—specifically, a rule barring retailers from breaking manufacturers' packages of multiple containers of beer and selling a single container of 70 ounces or less. The underlying idea was that such sales were especially likely to lead to public drunkenness and other antisocial behavior.

On the first reading, April 20, 2004, the Council considered and rejected the proposed amendment. At the "second reading," on May 18, Member Fenty proposed a more "targeted" version of the moratorium, banning singles sales in what one might call a gerrymandered zone within Ward 4—a

zone that in fact encompassed all existing Ward 4 Class A and Class B liquor licensees. Singles sales would remain permissible outside the moratorium zone, and licensees could transfer their licenses to areas outside the zone.

At the May 18 hearing a Council member objected that Fenty's revision constituted a substantial change in his earlier amendment, so that immediate passage would run afoul of the Home Rule Act's requirement that "[e]ach proposed act . . . shall be read twice in substantially the same form, with at least 13 days intervening between each reading." See D.C. Code § 1-204.12(a). The Council chair overruled the objection, and the Council approved the revised amendment by a vote of 11-2. The Council passed the entire bill on May 19 and, after considering and approving further amendments, did so again on June 1. Following expiration of the Congressional review period, the Omnibus Alcoholic Beverage Amendment Act of 2004, D.C. Law 15-187, 51 D.C. Reg. 6525-55 (July 2, 2004), including the targeted Ward 4 moratorium, codified as amended at D.C. Code § 25-341 (2004), went into effect.

Plaintiffs, who hold liquor licenses in Ward 4, sued in district court claiming that the ban violated the Home Rule Act's "two readings" requirement, plus several provisions of the federal Constitution. The district court granted plaintiffs' motion for a temporary restraining order on the day they filed suit, November 12, 2004, and issued a preliminary injunction on December 22. On June 16, 2005, the district court granted plaintiffs' motion for summary judgment with respect to the alleged violation of the Home Rule Act; in light of that ruling it dismissed the federal claims as moot.

A federal court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact. But a federal court lacks

jurisdiction altogether if the federal claims are insubstantial. Finding that to be the case here, we vacate the district court's judgment and order the district court to dismiss the local law claim without prejudice.

\* \* \*

The defendants did not argue to the district court that plaintiffs' federal claims were insubstantial. They do raise that argument here, however, and as the question is essential for our and the district court's subject-matter jurisdiction, there is no waiver; indeed, we would have to address it on our own motion if they had failed to do so. *Citizens for the Abatement of Aircraft Noise, Inc. v. Metropolitan Washington Airports Authority*, 917 F.2d 48, 53 (D.C. Cir. 1990), *aff'd*, 501 U.S. 252 (1991).

When federal and local claims all derive from a common nucleus of operative fact, the claims constitute a single case or controversy within the constitutional and statutory jurisdiction of the federal courts. See *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552–53 (2005); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367. Laws passed by Congress that are applicable exclusively to the District of Columbia are not federal law for jurisdictional purposes, see 28 U.S.C. §§ 1331, 1366, so any claims based on such laws are necessarily local. Although the Home Rule Act contained elements of federal law, see *Thomas v. Barry*, 729 F.2d 1469 (D.C. Cir. 1984), neither party suggests that the two readings requirement is anything other than local law. Thus the district court could not have entertained plaintiffs' claim under the Home Rule Act unless the court had supplemental jurisdiction over the claim.

5

A necessary condition for the exercise of supplemental jurisdiction is the substantiality of the federal claims. *Gibbs*, 383 U.S. at 725. If the federal claims are "obviously frivolous" or "so attenuated and unsubstantial as to be absolutely devoid of merit," *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (internal quotation marks and citations omitted), a federal court lacks subject-matter jurisdiction over those claims and, consequently, any local law claims. So it is here.

At oral argument we asked plaintiffs' counsel what they viewed as their most substantial claim, and he pointed to the argument that the District violated the Fifth Amendment's Due Process Clause by denying the affected licensees individualized notice and an opportunity to be heard. The Supreme Court's decision in *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441 (1915), clearly forecloses the argument. "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Id*. at 445. Here, the moratorium zone covered all 73 liquor stores in Ward 4. This is the classic *Bi-Metallic* scenario—the statute prohibits the same conduct by all 73 licensees. Not only would individualized hearings be impractical, they would be unnecessary, as the only disputable issue would be the link between the forbidden sales and the District's legislative goal. Although there might be situations where the Due Process Clause entitled a party to a hearing on whether the relevant legislative purposes called for inclusion of the party's property within a special geographic zone, see, e.g., *Chicago, Milwaukee, St. Paul & Pacific Railraod Co. v. Risty*, 276 U.S. 567, 574–75 (1928), this is not such a case; the purpose of the moratorium zone was clear, and there is no dispute that encompassing all Ward 4 licensees matched the legislative goal.

Plaintiffs also allege a violation of the substantive component of the Fifth Amendment's Due Process Clause. We have recently held that "substantive due process constrains only egregious government misconduct." *George Washington University v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003). An effort to stem public drunkenness by regulating the sale of alcohol doesn't remotely qualify.

Next is plaintiffs' theory that the moratorium violates the equal protection component of the Fifth Amendment's Due Process Clause because the moratorium covers only Ward 4 liquor stores—and none elsewhere in the District. See *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). But it is inherent in the nature of regulation that some people and businesses will be treated differently from others. As plaintiffs acknowledge, geographic classifications need be supported only by a rational basis, as such classifications are not inherently suspect and don't implicate a fundamental right. See *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439–40 (1974). Council Member Fenty identified reasons why public drunkenness and other concerns were particularly acute in Ward 4, and, again, there can be no doubt that a link exists between the sale of alcohol and public drunkenness. Thus, plaintiffs' equal protection claim is insubstantial.

Fourth, plaintiffs allege that the moratorium effects an unconstitutional taking under the Fifth Amendment. But in *Mugler v. Kansas*, 123 U.S. 623 (1887), the Supreme Court rejected a taking claim by a brewery owner whose brewery lost 75% of its value as a result of a state ban on the making of intoxicating liquors other than "for medical, scientific, and mechanical purposes." *Id*. at 633, 655, 657. The evolution of takings law since 1887 has offered nothing to help plaintiffs. Compare *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) (limiting takings claims on

preenforcement review to ones where the statute deprives plaintiffs of all "economically viable use" of their property).

Finally, plaintiffs assert that the statute is void for vagueness. Outside of the First Amendment context, a plaintiff must show that the law in question "is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). Even assuming that the moratorium language may be vague in some applications, plaintiffs' claim plainly fails this stringent test.

In light of the insubstantiality of plaintiffs' federal claims, we conclude that the district court lacked federal-question jurisdiction over those claims and thus supplemental jurisdiction over the Home Rule Act claim. Therefore, we reverse the judgment of the court and remand with instructions to dismiss plaintiffs' local law claim without prejudice.

*So ordered.*