**COMMUNITY FOR CREATIVE NON–VIOLENCE, et al., Appellants,**

v.

**Samuel R. PIERCE, Jr., Secretary of Housing and Urban Development.**

**No. 84–5682.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1985.

Decided April 8, 1986.

Mark A. Venuti, Washington, D.C., for appellants.

Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Newman T. Halvorson, Jr., Asst. U.S. Attys., and Gershon M. Ratner, Associate Gen. Counsel, H.U.D., Washington, D.C., were on brief for appellee.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Appellants have moved to disqualify the United States Attorney's Office as counsel for the appellee in an appeal now pending in this court. That appeal is from a dismissal of their claims in *Community for Creative Non-Violence v. Pierce,* No. 84–1898 (D.D.C. Sept. 4, 1984). We deal with the motion for disqualification, not with the merits of the appeal. We deny the motion.

Appellants, plaintiffs below, are the Community for Creative Non-Violence ("CCNV") and several individuals, all of whom identified themselves either as homeless persons or as those who, like CCNV, do work on behalf of the homeless. Their suit challenged a report issued by the Department of Housing and Urban Development entitled "A Report to the Secretary on the Homeless and Emergency Shelters." The report included an estimate of the number of homeless people nationally, an estimate that appellants claim is inaccurate and intentionally misleading. Believing that this report will diminish public support for efforts to provide assistance to the homeless, appellants asked the district court to declare the report unlawful and order it rescinded. The court dismissed these claims with prejudice, holding both that plaintiffs lacked standing to bring the action and that the preparation and distribution of the report did not constitute "agency action" reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1982).

One week before the district court rendered its decision, CCNV sent a letter to Joseph diGenova, United States Attorney, charging that officers of HUD had engaged in a "criminal coverup." CCNV leveled charges against one HUD official in particular, whom it alleged had committed perjury while defending the validity of the report in response to CCNV's lawsuit.

CCNV asked diGenova, whose office was defending HUD in the civil suit, to initiate a grand jury investigation.

Seven months later, CCNV—having received no answer—sent a second letter, asking again for an investigation. The United States Attorney's Office responded in a letter dated April 15, 1985.

We have considered the matters you raise in your letters of August 27, 1984 and March 26, 1985, in which you request that a Grand Jury investigation be conducted concerning the Department of Housing and Urban Development's (HUD) "Report to the Secretary on the Homeless and Emergency Shelters" and the statements of HUD officials defending the report.

As you know, the civil suit brought by your organization challenging the report, *Community for Creative Non-Violence, et al. v. Samuel R. Pierce, Jr.*, Civil Action No. 84–1898, was dismissed by Judge Jackson, and this dismissal is presently pending in the United States Court of Appeals. In our supplemental declaration filed in this suit, we responded to your complaints of flaws in the report's methodology. The estimate in the HUD report as to the number of homeless nationwide and the methodology used to arrive at the estimate necessarily involve application of considerable judgment and expert opinion in the area of statistics.

Upon review, I have concluded that the investigation you request is not warranted.

Letter from Joseph diGenova to Mitch Snyder, attached as Exh. B to Motion to Disqualify the Office of the United States Attorney as Counsel for Appellee and for Expedited Consideration. Upon receiving this letter, appellants filed in this court a motion to disqualify the United States Attorney's Office as counsel for appellee. Appellants regard the letter as proof that a conflict of interest exists between the United States Attorney's responsibilities to (1) represent HUD in the civil litigation, and (2) investigate possible criminal activity committed ·by officials at HUD in the

course of that same litigation. The language of diGenova's letter, appellants claim, indicates that this conflict "has so blinded the United States Attorney's Office that appellants have been essentially stripped of their right to have their [criminal] claims heard at all." Supplemental Brief in Support of Motion to Disqualify the United States Attorney as Counsel for Appellee at 3. Arguing that the prosecutorial responsibility is the paramount one, appellants ask that the entire office be disqualified from representing HUD in the civil suit so that the request for an investigation can be acted upon, whether favorably or not, without the taint of the suggested conflict.

 Had CCNV and the other appellants challenged *directly* the United States Attorney's decision not to conduct an investigation—by filing a complaint in the district court—they would have confronted an unbroken line of explicit precedent holding that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) (citing *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 2 L.Ed.2d 512 (1962); *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct.1752, 1754, 6 L.Ed.2d 989 (1961)). *Accord Leeke v. Timmerman*, 454 U.S. 83, 102 S.Ct. 69 70 L.Ed.2d 65 (1981). The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws; when reviewing the exercise of that power, the judicial authority is, therefore, at its most limited. *See Nathan v. Smith*, 737 F.2d 1069, 1077 (D.C.Cir.1984) (Bork, J., concurring); *Newman v. United States*, 382 F.2d 479 (D.C.Cir.1967). That authority is non-existent in cases such as the one posited here, because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S.*, 410 U.S. at 619, 93 S.Ct. at 1149.

██ CCNV and its co-plaintiffs did not file such a lawsuit. Instead, in their capacity as appellants in the civil suit, they moved to disqualify the United States Attorney's Office from representing the appellee, reasoning that disqualification would enable that Office to give fair and impartial consideration to their request for an investigation. This novel motion, however, suffers from the same infirmities as would a direct challenge to the United States Attorney's prosecutorial discretion. We are asked, that is, to intrude, albeit indirectly, into the process of prosecutorial decisionmaking by a party without standing to raise the claim.

██ Appellants have not alleged that disqualification of the United States Attorney's Office would assist them in their appeal. Perhaps because that form of assistance would appear to be an illegitimate benefit, appellants have been at pains to point out that excellent private counsel are available to the government to defend the appeal. But that argument merely makes it clearer that appellants' only rationale for standing is that they want to make a criminal investigation and prosecution of HUD officials more likely. For purposes of standing analysis, increasing the prospects of a criminal prosecution is no different from compelling a prosecution. Appellants have standing to do neither. Indeed, since the disqualification they seek is not even related to their chances of success on the underlying appeal, appellants are in no different position from any other citizens who want a prosecutor to take action. The motion thus has no real relation to the litigation to which it is appended.

Though they have not made the point, it is possible to imagine a way in which the disqualification of the United States Attorney might conceivably aid appellants' civil case. If the United States Attorney were disqualified here, appellants contend that a criminal investigation would be more likely because that order would remove the prosecutor's conflict of interest. If an investigation in fact followed and if the United States Attorney found that a HUD official had committed perjury in defending the report, then, presumably, that finding would, in one way or another, advance appellants' civil suit. Aside from the fact that appellants have shown no reason to think that the United States Attorney's determination that the investigation is not warranted is flawed or tainted in any way, the chain of events we have posited is entirely too speculative to confer standing. In *Linda R.S.*, an unwed mother sought to require the local district attorney to prosecute the father of her child for nonsupport. She contended that interpreting the criminal statute as applying only to the parent of a legitimate child was irrational and therefore in violation of the equal protection clause of the fourteenth amendment. The Supreme Court held the mother lacked standing because she had failed to allege a "sufficient nexus" between her injury and the district attorney's refusal to prosecute. 410 U.S. at 617, 93 S.Ct. at 1149. Jailing the father would not provide support payments.

> The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative. Certainly the "direct" relationship between the alleged injury and the claim sought to be adjudicated, which previous decisions of this Court suggest is a prerequisite of standing, is absent in this case.

410 U.S. at 618, 93 S.Ct. at 1149. The chain of events that CCNV and the other appellants would have to posit to show a benefit to their civil action is even more speculative and less "direct."

The motion is denied. Nothing in this opinion addresses the validity of the holding of the district court, which concerns a wholly different standing issue. That decision will be reviewed as the appeal proceeds.

*Motion denied.*